IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOMAS CEREZO-MARTIN,

    **Plaintiff,**

             **v.**                    **CIVIL NO.** 15-1350 (FAB)

FERROVIAL AGROMAN, S.A.,

    **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

    Pending before the Court is defendant Ferrovial Agroman S.A. ("Ferrovial")'s motion for summary judgment requesting the dismissal of this case in its entirety. (Docket No. 10.) Having considered defendant's motion, as well as plaintiff's opposition, (Docket No. 15), the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment.

### I.  BACKGROUND

**A.  Procedural Background**

    On April 6, 2015, plaintiff Tomas Cerezo-Martin ("Cerezo") filed a complaint against Ferrovial alleging discrimination on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-15; Puerto Rico Law No. 100 ("Law 100"), P.R. Laws Ann. tit. 29, § 146 *et seq.*; and Puerto Rico Law No. 80 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a-185m.  (Docket No. 1.)  On November 12, 2015,

Ferrovial filed a motion for summary judgment arguing that Cerezo cannot establish a valid claim of national original discrimination because:  (1) he is unable to make out a *prima facie* case of discrimination, and (2) he cannot show that Ferrovial's proffered reason for terminating his employment is pretextual.  (Docket No. 10.)  On December 12, 2015, Cerezo filed an opposition to the motion for summary judgment, asserting that:  (1) all *prima facie* elements for a hostile work environment claim pursuant to Title VII are present, and (2) his claim of national origin discrimination is viable when analyzed using a "mixed-motives" framework.  (Docket No. 15.)

**B.   Uncontested Relevant Facts**[1]

Cerezo is a Spanish national who was born and raised in the town of Herguijuela de la Sierra near the city of Salamanca, Spain. (Docket No. 15-2.)  He lived in Salamanca until the age of 36, at which time he moved to Puerto Rico.  Id.  He was first hired by Ferrovial - a registered foreign corporation authorized to conduct business in Puerto Rico - on February 8, 2005.  (Docket No. 9-1.) This employment, however, was subject to a one month probationary

---

[1] Defendant failed to file a reply to plaintiff's opposing statement of uncontested material facts contained in Docket No. 15-1.  Because the additional facts alleged in plaintiff's opposition were supported by citations to appropriate record materials, see Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686 (1st Cir. 1993) (holding that unsworn statements signed under penalty of perjury can be used to oppose a motion for summary judgment), those facts are deemed admitted by defendant pursuant to Local Rule 56(e).

period.  (Docket No. 16-2.)  Cerezo did not pass this period and
was terminated on March 8, 2005.  (Docket No. 16-3.)  Several years
later, in December 2009, he was again hired by Ferrovial in Puerto
Rico and remained there until March 18, 2011, at which time he
voluntarily resigned from his job as a foreman.  (Docket No. 16-4.)
He was hired by Ferrovial for a third time on January 23, 2012 as
a foreman and was stationed at a construction project located in
Aguadilla.  (Docket No. 16-5.)  On March 19, 2012, he was
reassigned to the same project where he had worked during his 2009-
2011 employment with the company, which was now directed by project
manager Mr. Noel Cintron ("Cintron").  (Docket No. 9-1.)  After his
arrival at this project, Cerezo began to experience problems with
certain co-workers, who made "xenophobic insults" and frequently
told him to "stay in Spain" or to "go back to [his] country" so
that he would not take jobs away from Puerto Ricans.  (Docket
No. 15-2.)  Although he complained about this treatment to several
of his supervisors and to Cintron, no action was ever taken to
address the situation.  Id.

    Around October 2013, Cerezo began making plans to vacation in
Spain.  (Docket No. 15-2.)  Although he had hoped to travel from
December 16, 2013 to January 10, 2014, Cintron was unwilling to
approve that period because it included more vacation days than
Cerezo had accumulated during his employment.  (Docket No. 9.)
Following an extended discussion between them, Cerezo finally

submitted to Cintron a signed vacation request form, which listed December 23, 2013 as the start date of his vacation, and January 10, 2014 as the end date. (Docket No. 9-8.) Exercising the discretion granted to Ferrovial project managers to approve employee vacation periods, Mr. Cintron accepted that request. (Docket No. 9.) Cerezo traveled from Puerto Rico to Spain on December 16, 2013 and returned on January 12, 2014. Id. Upon his return to work on January 13, 2014, he received a termination letter stating that he was being fired for "insubordination and job abandonment." (Docket No. 9-1.) After that date, Ferrovial did not hire anyone to replace Cerezo, nor did it have the need to do so. Id.

## II.   SUMMARY JUDGMENT STANDARD

A court will grant summary judgment if the moving party shows, based on materials in the record, "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodriguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina, 532 F.3d 28, 30 (1st Cir. 2008)).

At the summary judgment stage, a court must construe the entire record in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005). The Court refrains from making credibility determinations and weighing the evidence, but it disregards any conclusory allegations, improbable inferences, and unsupported speculation. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

## III.   DISCUSSION

Cerezo claims that Ferrovial discriminated against him and subjected him to a hostile work environment because of his national origin in violation of Title VII and several local laws. The Court will now address each of these claims in turn.

## A.   Title VII National Origin Discrimination Claims

### i.   Discriminatory Discharge

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). "National origin" refers to the country where a person was born or the country from which his or her ancestors came. Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973). A plaintiff may demonstrate a national origin discrimination claim pursuant to Title VII "with circumstantial

evidence through the burden-shifting scheme set forth in <u>McDonnell</u>
<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973), and/or by presenting evidence of discrimination on the
basis of a prohibited bias under the mixed-motives theory of
discrimination." <u>Burns v. Johnson</u>, 829 F.3d 1, 8 (1st Cir. 2016).
Here, plaintiff has indicated that he wishes to avoid <u>McDonnell</u>
<u>Douglas</u>' "single motive" framework by proceeding pursuant to a
mixed-motive theory of discrimination.  At the same time, however,
he also affirms that Ferrovial's articulated reason for terminating
his employment was a pretext for national origin discrimination.
Because the issue of pretext is a central characteristic of the
<u>McDonnell Douglas</u> scheme, not of mixed-motive analysis, the Court
will evaluate plaintiff's claim pursuant to both legal frameworks.

>    a.    **The <u>McDonnell Douglas</u> Framework**

Pursuant to the <u>McDonnell Douglas</u> scheme, a
plaintiff who sues pursuant to Title VII must first establish a
*prima facie* case of discrimination, which creates an inference of
discrimination.  <u>See</u> <u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 212
(1st Cir. 2003).  If a *prima facie* case is established, "the burden
of production — but not the burden of persuasion — shifts to the
employer, who must articulate a legitimate, non-discriminatory
reason for the adverse employment action." <u>Lockridge v. The Univ.</u>
<u>of Maine Sys.</u>, 597 F.3d 464, 470 (1st Cir. 2010).  If the employer
does so, the plaintiff has to show by a preponderance of the

evidence that the employer's proffered explanation is pretextual and that the actual reason for the adverse employment decision is discriminatory.  Id.; Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994).

In Title VII employment termination cases, a plaintiff establishes a *prima facie* case of national origin discrimination by showing that:

> "(1) the plaintiff is within a protected class; (2) the plaintiff was qualified for and performing his or her job at a level that met the employer's legitimate expectations; (3) the plaintiff was nevertheless dismissed; and (4) after the plaintiff's departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work."

Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).  Defendant Ferrovial does not dispute elements (1)-(3) in its motion for summary judgment.  Rather, Ferrovial asserts that Cerezo cannot establish a *prima facie* case because there is no evidence to support the fourth and final requirement.  Specifically, Ferrovial contends that the company neither hired anyone to replace Cerezo following his discharge, nor had the need to do so.  This fact is adequately supported by evidence in the record, see Docket No. 9-1 at p.3, and was not properly controverted by plaintiff in his opposition.  Accordingly, the Court agrees with Ferrovial and finds that plaintiff is unable to establish a *prima facie* case of national origin discrimination, the first required step pursuant to the McDonnell Douglas standard.

### b.    Mixed-Motives Analysis

As discussed above, the McDonnell Douglas framework is not the exclusive means of establishing a Title VII discrimination claim. Where there is evidence of both discriminatory and non-discriminatory animus, and the plaintiff requests it, the court may evaluate the evidence through the mixed-motive framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). See Moron-Barradas v. Dep't of Educ. of the Commonwealth of P.R., 488 F.3d 472, 480 (1st Cir. 2007). Pursuant to this framework, codified at 42 U.S.C. § 2000e-2(m), a "plaintiff's burden is tempered so that [he or] she need prove only that the discriminatory action was a *motivating factor* in an adverse employment decision." Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002). In other words, when presenting a mixed-motive theory, a plaintiff can prove an employer liable by establishing that the employment decision was motivated in part by a discriminatory animus, even though other factors besides the discrimination influenced the employer's decision. See Sher v. U.S. Dep't of Veterans Affairs, 488 F.3d 489, 508 n.22 (1st Cir. 2007) ("In a mixed motive case, the plaintiff would only have to establish that national origin . . . discrimination was a motivating factor in the analysis, rather than the sole basis for the decision.") Additionally, the plaintiff need not present

direct evidence of discrimination to pursue a mixed-motive theory.
Rather, "[a] plaintiff is entitled to prove discrimination by
circumstantial evidence alone." Chadwick v. WellPoint, Inc., 561
F.3d 38, 46 (1st Cir. 2009); see also Desert Palace, Inc. v. Costa,
539 U.S. 90, 98-99 (2003) (holding that Title VII "does not
mention, much less require, that a plaintiff make a heightened
showing through direct evidence" in mixed-motive cases).  Once the
plaintiff demonstrates that his membership in a protected class was
a motivating factor behind an adverse employment decision, the
employer is given an opportunity "to prove by a preponderance of
the evidence that it would have made the same decision regardless
of the impermissible consideration." Diaz v. Jiten Hotel Mgmt.,
Inc., 671 F.3d 78, 82 (1st Cir. 2012).  If the employer
successfully invokes this "limited affirmative defense," it is not
absolved of liability, but the remedies available to the plaintiff
are effectively restricted.  Desert Palace, 539 U.S. at 94.

        Ferrovial did not reply to plaintiff's opposition.
It therefore did not directly address Cerezo's invocation of mixed-
motive analysis or the issue of whether his national origin was a
motivating - rather than the single - factor behind his discharge.
In its motion for summary judgment, however, Ferrovial asserts that
the record is devoid of evidence that would support a finding that
discriminatory animus played any role in the decision to terminate
Cerezo's employment.  (Docket No. 10 at p. 12.)  The Court agrees.

As the First Circuit Court of Appeals has noted, "even in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that . . . the adverse employment decision was caused at least in part by a forbidden type of bias." Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003). Here, the record before the Court reveals various incidents in which plaintiff was harassed and ridiculed by several co-workers on the basis of his Spanish nationality. As discussed below, these events are problematic and the law may indeed provide an avenue through which Cerezo can seek redress for those indignities. Nevertheless, plaintiff offers no evidence to show how those hostile encounters with his colleagues translated into discriminatory intent on the part of those responsible for the termination decision. Rather, he simply imputes the animus shown by his co-workers to the decision-maker behind his discharge. This speculative leap is especially suspect given that the decision-maker in this case, Mr. Cintron, was also the individual who, knowing of Cerezo's Spanish heritage, specifically sought him out for repeated employment with Ferrovial. (Docket No. 15-2 at p. 2.) Thus, even when viewing the record in the light most favorable to him, the Court finds that Cerezo has adduced insufficient circumstantial evidence to establish a genuine issue of material fact as to whether his Spanish nationality was a motivating factor behind Ferrovial's termination decision. Accordingly, defendant's motion for summary judgment with respect

to plaintiff's Title VII claim for discriminatory discharge is **GRANTED**.[2]

### ii. Hostile Work Environment

Plaintiff's second cause of action pursuant to Title VII concerns the existence of a hostile work environment. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). To prevail on his hostile workplace environment claim, Cerezo must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership of the protected class; (4) that the harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive work

_____

[2] The Court notes that Cerezo would perhaps have been better served by bringing a claim pursuant to Title VII's anti-retaliation provision, which makes it unlawful for an employer to retaliate against a person who complains about discriminatory employment practices. See 42 U.S.C. § 2000e-3(a). Here, the record reveals that plaintiff complained several times about the harassment perpetrated by his co-workers and was fired within a relatively short period of time thereafter. While those facts are not alone sufficient to support a finding of discriminatory animus on the part of those in charge of the termination decision, they were likely adequate to get a claim of retaliation before a jury. By failing to raise that type of claim in either his complaint or his opposition to defendant's motion for summary judgment, however, plaintiff waived that specific cause of action.

environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.  See Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007).  The record in this case contains sufficient facts to demonstrate that plaintiff was the victim of unwelcome harassment based on his Spanish nationality.  On more than one occasion, plaintiff was subjected to xenophobic comments and insults, including being called a "chicken shit Spaniard," a "Spanish son of a bitch," and a "Spanish cabron."  (Docket No. 15-2 at p. 2-3.)  He was also told multiple times to "go back to [his] country" and to stop taking jobs away from Puerto Ricans. Furthermore, the record shows that Ferrovial was aware of this harassment, as plaintiff had complained both to his supervisors and a project manager about these incidents.  (Docket No. 15-2 at p. 4.)  The essential inquiry, therefore, is whether this unwelcome harassment was sufficiently severe or pervasive for plaintiff's claim to move forward to trial.

    a.   **Severe or Pervasive**

        The severe or pervasive inquiry is "highly fact specific."  Gorski v. New Hampshire Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002).  There is no "mathematically precise test" for determining when conduct in the workplace moves beyond the "merely

offensive" and enters the realm of unlawful discrimination. Harris, 510 U.S. at 21-22. Rather, the court must consider the totality of the circumstances in making its assessment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). Factors the court should consider include "the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 23. Using these factors as a rough guide, the court's role is "to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). Nevertheless, "[s]ubject to some policing at the outer bounds," it is generally "for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19 (1st Cir. 2002) (internal quotation marks omitted).

The record before the Court, at least with respect to plaintiff's hostile work environment claim, consists primarily of Cerezo's own unsworn statement taken under penalty of perjury. Although it is unlikely that any of the individual incidents he alleges would rise to the level of actionable harassment on their own, the Court's concern must be with the totality of the

circumstances.  Viewing the evidence in the light most favorable to
plaintiff and resolving all factual disputes in his favor, the
Court finds that the evidence in this case would permit - although
it certainly would not compel - a reasonable jury to find that
plaintiff was indeed subjected to a hostile work environment.  The
record discloses numerous incidents in which Cerezo's co-workers
disparaged and threatened him on the basis of his national origin.
Several of them repeatedly told Cerezo that he should return to his
home country and engaged in xenophobic name calling.  This
evidence, although thin, is sufficient to raise a triable issue of
material fact as to whether the harassment allegedly perpetrated by
certain colleagues was sufficiently severe or pervasive to create
a hostile work environment.  Accordingly, it is enough to allow
Cerezo to take this claim to a jury.  Ferrovial's motion for
summary judgment with respect to that specific cause of action is
therefore **DENIED.**

**B.   Supplemental Commonwealth Law Claims**

     Plaintiff Cerezo also invokes the Court's supplemental
jurisdiction over his Commonwealth law claims, which are brought
pursuant to Laws 100 and 80.

**i.   Discriminatory Discharge and Hostile Work Environment
     Claims pursuant to Puerto Rico Law 100**

     "Law 100 is a broad antidiscrimination statute analogous
to Title VII in many respects." Perez-Cordero v. Wal-Mart Puerto
Rico, Inc., 656 F.3d 19, 26 n.10 (1st Cir. 2011) (citing Monteagudo

v. Asociación de Empleados del Estado Libre Asociado de P.R., 554
F.3d 164, 169 n.3 (1st Cir. 2009) (describing Law 100 as an
analogue to Title VII)). While Law 100 employs different
presumptions and burdens of proof than Title VII, "the burden of
proof on the ultimate issue remains with the plaintiff in both
causes of action." Rivera-Rodríguez v. Sears Roebuck de Puerto
Rico, Inc., 432 F.3d 379, 383 n.2 (1st Cir. 2005). Thus, where a
plaintiff has "adduced no significantly probative evidence that his
discharge was motivated by [discriminatory animus]," summary
judgment on a pending Law 100 claim is appropriate. Dávila v.
Corp. de Puerto Rico Para La Difusión Pública, 498 F.3d 9, 18 (1st
Cir. 2007). As discussed above, Cerezo's discriminatory discharge
claim fails under federal law because the evidence offered in the
record is insufficient to raise a genuine issue as to whether
Ferrovial's conduct was motivated, even in part, by national origin
discrimination. A claim for discriminatory discharge pursuant to
Law 100 is, therefore, equally insupportable and must suffer the
same fate as Cerezo's Title VII claim.

          Nevertheless, a hostile work environment claim pursuant
to Law 100 remains viable. Courts in this district have held that
hostile work environment claims brought pursuant to Law 100 are
"essentially the same as a Title VII hostile work environment
claim." See Aponte-Rivera v. DHL Solutions (USA), Inc., 2010 WL
376330, *2 (D.P.R. 2010) (Leinenweber, J.) (collecting cases); see

also Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 56
(1st Cir. 2000) (using Title VII hostile work environment
precedents to construe Puerto Rico law.)  Because the Court has
determined that plaintiff's Title VII hostile work environment
claim should proceed to trial, defendant's motion for summary
judgment with respect to that claim's Law 100 counterpart is also
**DENIED**.

### ii. Puerto Rico Law 80 Claim for Unjust Dismissal

Puerto Rico Law 80 prohibits dismissal of employees
without just cause.  The statute permits dismissals for a number of
reasons, including an employee's improper or disorderly conduct,
negligent attitude towards his work, and violations of the
employer's rules and regulations.  See P.R. Laws Ann. tit. 29,
§ 185b.  On the other hand, "[a] discharge made by mere whim or
fancy of the employer or without cause related to the proper and
normal operation of the establishment shall not be considered as a
discharge for [just] cause."  Id.  Once the plaintiff has proven
that he was directly or constructively discharged, Law 80 shifts
the burden of proof to the employer to show that the discharge was
justified.  See P.R. Laws Ann. tit. 29, § 185k.  "Accordingly,
Law 80 establishes a presumption of unjust dismissal against
employers."  Varela-Teron v. Banco Santander de Puerto Rico, 257 F.
Supp. 2d 454, 464 (D.P.R. 2003) (Laffitte, J.).

Here, the record shows that Ferrovial's stated reason for terminating plaintiff was for "insubordination and job abandonment." (Docket No. 9-1 at p. 3.) Specifically, Ferrovial asserts that Cerezo took vacation time beyond what had been authorized in a Vacation Request Form that had been filled out by him and approved by his superiors. Id. Ferrovial further contends that, pursuant to company protocol, employees are required to fill out a Vacation Request Form for all vacation requests and that "no verbal request of vacation time and/or verbal authorization for vacation time are permitted." Id. at p. 2. Plaintiff, however, disputes this latter point and presents evidence indicating that one of his supervisors had orally granted him permission to extend his vacation period without submitting another, revised request form. (Docket No. 15-2 at pp. 5-6.) This contradictory evidence raises a genuine dispute of material fact as to whether plaintiff's extended vacation time had been validly authorized pursuant to Ferrovial's internal procedures. Because the question of whether Ferrovial had "just cause" to terminate plaintiff hinges on the resolution of that dispute, summary judgment as to plaintiff's Law 80 claim is inappropriate at this time. Defendant's motion with respect to that particular cause of action is therefore **DENIED.**

### IV.   CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** defendant's motion for summary judgment.  (Docket No. 10.)  Plaintiff fails to present sufficient evidence to establish an issue of material fact as to whether Ferrovial's decision to terminate his employment was motivated, even in part, by discriminatory animus.  Defendant's motion for summary judgment with respect to plaintiff's Title VII and Law 100 discriminatory discharge claims is therefore **GRANTED.**  Because a reasonable jury could find that the harassing conduct of plaintiff's various co-workers was sufficiently severe or pervasive to alter the conditions of plaintiff's employment, defendant's motion for summary judgment with respect to Cerezo's Title VII and Law 100 hostile work environment claims is **DENIED.**  Finally, a genuine dispute of material fact exists as to whether Cerezo had obtained proper authorization for his extended vacation period, and, therefore, whether Ferrovial had just cause to terminate his employment.  Ferrovial's motion for summary judgment with respect to Cerezo's Law 80 claim is therefore **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 4, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge